UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLA KATHLEEN EHOFF, | No. 2:14-cv-2279-EFB |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is granted, defendant's motion is denied, and the matter is remanded for further consideration.

I.  BACKGROUND

Plaintiff filed applications for a period of disability, DIB and SSI, alleging that she had been disabled since March 20, 2013. Administrative Record ("AR") 162-177. Her applications were denied initially and upon reconsideration. *Id*. at 99-103, 109-113. On May 28, 2014, a hearing was held before administrative law judge ("ALJ") Cynthia Floyd. *Id*. at 21-66. Plaintiff

was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified. *Id*.

On June 16, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Act.[1] *Id*. at 10-20. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since March 20, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, 416.971 *et seq.*).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3. The claimant has the following severe impairments: lumbago; major depressive disorder; anxiety disorder; posttraumatic stress disorder (PTSD); bilateral trochanteric bursitis; bilateral subacromial bursitis; and fibromyalgia (20 CFR 404.1520(c) and 416.920(c)).

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and walk for up to 6 hours, and sit up to 2 hours in an 8-hour workday with normal breaks.  She can also frequently handle [sic] feel, finger, overhead reach, and reach in all directions; and frequently climb, balance, stoop, crouch, kneel and crawl.  The claimant can also perform simple, routine tasks, with no interaction with the general public, but frequently interact with co-workers and supervisors in a low stress environment requiring only occasional decision making (20 CFR 404.1567(b) and 416.967(b)).

   * * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

   * * *

7. The claimant was born on June 27, 1961 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset day (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), and 416.969(a)).

    * * *

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 20, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 12-20.

Plaintiff's request for Appeals Council's review was denied on August 8, 2014, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-5.

## II.     LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III.    ANALYSIS

Plaintiff argues that the ALJ committed reversible error by (1) rejecting the opinion of her treating physician and (2) discrediting plaintiff's testimony without clear and convincing reasons. ECF No. 14 at 5-13.

1    Plaintiff first argues that the ALJ failed to give legally sufficient reasons for rejecting the
2 opinion of her treating physician, Dr. Boyd Johnson. *Id*. at 5-10.  The weight given to medical
3 opinions depends in part on whether they are proffered by treating, examining, or non-examining
4 professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  Ordinarily, more weight is
5 given to the opinion of a treating professional, who has a greater opportunity to know and observe
6 the patient as an individual. *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996).  To
7 evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its
8 source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical
9 findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or
10 examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831.
11 In contrast, a contradicted opinion of a treating or examining professional may be rejected for
12 "specific and legitimate" reasons that are supported by substantial evidence. *Id*. at 830.  While a
13 treating professional's opinion generally is accorded superior weight, if it is contradicted by a
14 supported examining professional's opinion (e.g., supported by different independent clinical
15 findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.
16 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an
17 examining physician relies on the same clinical findings as a treating physician, but differs only
18 in his or her conclusions, the conclusions of the examining physician are not 'substantial
19 evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

20    Plaintiff received monthly treatment from Dr. Boyd Johnson since 2011.  AR at 376.  Dr.
21 Johnson diagnosed plaintiff with chronic lower back pain, fibromyalgia, PTSD, depression,
22 anxiety, and hip arthritis. *Id*.  He opined that plaintiff could occasionally lift and constantly carry
23 5 pounds; frequently carry 10 pounds; had difficulty stooping, crouching and bending; was
24 required to lie down or recline about two hours in an eight-hour work day; could sit only about
25 one hour in an eight-hour workday; stand or walk less than one hour in an eight-hour workday;
26 and needed unscheduled breaks every one to two hours to lie down for 15 minutes. *Id*. at 376-
27 379.  It was also his opinion that plaintiff had minimal limitations in grasping, fingering, and
28 reaching overhead; could not climb ladders, ropes, or scaffolds; her pain would interfere with her

5

attention and concentration constantly; she would be "off-task" 25% of the time during an eight-hour work day due to her physical limitations; and she would be absent five days or more each month due to her limitations. *Id*.

Plaintiff underwent a comprehensive internal medicine evaluation, which was performed by Dr. Tomas Rios, an examining physician. *Id*. at 357-361. The examination revealed back tenderness; 12 out of 18 positive trigger points for fibromyalgia; and tenderness along the trochanteric area bilaterally. *Id*. He diagnosed plaintiff with degenerative disc disease of the lumbar spine, bilateral trochanteric bursitis, bilateral subacromial bursitis, status post left shoulder surgery, and fibromyalgia. *Id*. at 360. He opined that plaintiff could stand and walk for up to six hours; had no limitation in sitting; could carry 20 pounds occasionally and 10 pounds frequently; and could frequently climb, balance, stoop, kneel, crouch, crawl, reach, handle, feel and finger. *Id*. at 360-361.

The record also contains an opinion from B. Williams, M.D., a non-examining physician. *Id*. at 75-76. Dr. Williams opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and had no postural or manipulative limitations. *Id*. Dr. I. Ocrant, M.D., also a non-examining physician, reviewed plaintiff's records and affirmed Dr. Williams's opinion. *Id*. at 91-92.

In assessing plaintiff's Residual Functional Capacity ("RFC"), the ALJ gave "little weight" to Dr. Johnson's opinion, while giving "substantial weight" to Dr. Rios's opinion and "generous weight" to Drs. Williams and Ocrant's opinions. *Id*. at 15-16. As Dr. Johnson's opinion was contradicted by the other physician's opinions, the ALJ was required to give "specific and legitimate" reasons for rejecting his treating opinion. *See Orn*, 495 F.3d at 632. The ALJ gave several reasons for rejecting Dr. Johnson's opinion. Specifically, the ALJ found that Dr. Johnson's opinion was (1) too restrictive and inconsistent with the medical evidence; (2) inconsistent with treatment notes, which reflected only conservative treatment; and (3) inconsistent with a prior opinion Dr. Johnson provided. AR at 16. As explained below, none of these reasons provide a sufficient basis for discrediting Dr. Johnson's opinion.

First, the ALJ found that Dr. Johnson's opinion was too restrictive and inconsistent with the medical evidence. AR at 16. A treating physician's opinion may be discredited if it is unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). Plaintiff argues that the ALJ's reliance on a lack of objective physical indicators was inappropriate due to her fibromyalgia. ECF No. 14 at 8.

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). "Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Id*. at 589-90. "The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id*. at 590. "Objective physical signs, laboratory results, and x-ray results are generally negative, and because the majority of patients appear tense and anxious and have no recognizable objective basis for symptoms, the syndrome is often considered psychogenic." *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 872-972 (9th Cir. 2004), *abrogated on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006). *See also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir.2004) (holding that ALJ erred in effectively requiring 'objective' evidence for a disease that eludes such measurement).

Generally an ALJ can discredit the treating doctor's opinion on the basis of a lack of objective medical evidence. However, there can only be test results when tests actually exist for the condition in question. When the plaintiff has been diagnosed with having a disease that has no objective medical tests, such as fibromyalgia, an ALJ cannot discredit the treating doctor's opinion due to a lack of objective medical findings. *See Benecke v. Barnhart,* 379 F.3d 587 (9th Cir. 2004) (holding "the disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms" and that "there are not laboratory tests to confirm the diagnosis").

Here, Dr. Johnson's opinion specifically states that plaintiff has been diagnosed with fibromyalgia and the symptoms he identifies are consistent with that diagnosis. *See* AR at 376 (identifying plaintiff's symptoms to include fatigue, low back pain, and muscle soreness).

1 Significantly, the ALJ acknowledged that plaintiff's severe impairments include fibromyalgia.
2 *Id*. at 12.  In light of plaintiff's diagnosis of fibromyalgia, the ALJ's reliance on a lack of
3 objective medical evidence supporting Dr. Johnson's opinion was inappropriate.

4 The ALJ also rejected Dr. Johnson's opinion because it was inconsistent with treatment
5 notes, which indicated that plaintiff was only prescribed conservative treatment.  *Id*. at 16.  An
6 ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet
7 opines that a claimant suffers disabling conditions.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th
8 Cir. 2001).  However "[a] claimant cannot be discredited for failing to pursue non-conservative
9 treatment options where none exist."  *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir.
10 2010).  Plaintiff has sought continuous treatment from Dr. Johnson since 2011, and had been
11 prescribed various medications to manage her fibromyalgia and pain, including Gabapentin,
12 Tramadol, Demerol, Vicodin, Soma, and Norco.  AR at 271, 284-318, 370-400, 401-403.  She
13 complied with the recommend course of treatment, and there is no indication from the record that
14 additional treatment was necessary or even available.  *Gillett v. Astrue*, 2008 WL 5042848, at *3
15 (C.D. Cal. Nov. 25, 2008) ("[T]here is no surgical or other cure for fibromyalgia . . . .") (citation
16 omitted); *See Benecke,* 379 F.3d at 590 ("Fibromyalgia's cause is unknown, there is no cure, and
17 it is poorly-understood within much of the medical community.").  There simply is no basis for
18 the ALJ's finding that the medication regiment prescribed by Dr. Johnson was conservative and
19 therefore justified rejecting his treating opinion.  *See, e.g., Matamoros v. Colvin*, 2014 WL
20 1682062, at *4 (C.D. Cal. April 28, 2014) (finding no evidence that plaintiff's treatment for
21 fibromyalgia was conservative where plaintiff was treated with Vicodin, Celebrex, and Flexeril,
22 among other drugs); *Sharpe v. Colvin*, 2013 WL 6483069, at *8 (C.D. Cal. Dec. 10, 2013) (where
23 claimant treated with Vicodin, Neurontin, Tramadol, Soma, Baclofen and Flexeril for her
24 fibromyalgia, ALJ erred in rejecting claimant's credibility on the ground that the treatment
25 purportedly was "only largely routine").

26 Lastly, the ALJ concluded that Dr. Johnson's opinion was not credible because it was
27 "inconsistent with his prior opinion written only one month earlier indicating [plaintiff] simply
28 could not work as a hairstylist anymore."  AR at 16.  In addition to Dr. Johnson's February 18,

2014 opinion, which is set forth above, Dr. Johnson wrote a letter in which he stated that plaintiff "has multiple health issues that have prevented her from continuing doing [sic] her job as a Hair Stylist." *Id*. at 354. As an initial matter, contrary to the ALJ's finding, the two opinions were not provided one month apart. The letter was dated October 18, 2013, while the opinion assessing plaintiff's functional imitations was provided on February 18, 2014, four months later. *Id*. at 354, 376-379.

Aside from this discrepancy, there is nothing inconsistent between the two opinions. The letter simply states that plaintiff is unable to perform or return to her prior work, without discussion of plaintiff's specific limitations. *Id*. at 354. On the RFC Medical Source Statement form, dated February 18, 2014, Dr. Johnson provides his opinion regarding plaintiff's specific functional limitations. *Id*. at 376-379. None of the limitations assessed are inconsistent with his October 2013 statement that plaintiff is unable to work as a hairdresser. Instead, he assessed severe limitations indicating an inability to work. Thus, contrary to the ALJ's finding, the two opinions are consistent. Accordingly, the ALJ's finding that Dr. Johnson provided inconsistent opinions is not supported by substantial evidence.

None of the reasons articulated by the ALJ provided a clear and convincing basis for rejecting Dr. Johnson's opinion. Instead, it appears that the ALJ failed to properly consider plaintiff's fibromyalgia when considering the medical evidence of record, including the Dr. Johnson's opinion. Accordingly, this matter must be remanded for further consideration of medical evidence of record, including plaintiff's fibromyalgia and the medical opinion evidence.[2]

IV.   CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further consideration consistent with this order; and

---

[2] As this matter must be remanded for further consideration, the court declines to address plaintiff's other challenges to the ALJ's decision.

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: March 22, 2016.

```
                    _____
                    EDMUND F. BRENNAN
                    UNITED STATES MAGISTRATE JUDGE
```